UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER WADE,
      Petitioner,

vs.                      Case No.:  3:23cv4079/MCR/ZCB

RICKY D. DIXON,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner, Christopher Wade, seeks a writ of habeas corpus under
28 U.S.C. § 2254.  (Doc. 1).  Respondent has moved to dismiss, arguing
that the petition was untimely filed.  (Doc. 20).  Petitioner has responded
in opposition, and the matter is ripe for decision.[1]  (Doc. 26).  For the
reasons below, Respondent's motion to dismiss should be granted.

## I.    Background

A state court jury convicted Petitioner of sexual battery with use of
a deadly weapon or force likely to cause serious personal injury.  (Doc.
20-1).  The state court sentenced Petitioner to life in prison.  (Doc. 20-2).

---

[1] The Court believes this matter can be resolved based on the pleadings
and attachments without an evidentiary hearing.  Rule 8(a), Rules
Governing Section 2254 Cases.

The Florida First District Court of Appeal ("First DCA") affirmed on February 11, 2019, and denied Petitioner's motion for rehearing on March 20, 2019. (Doc. 20-3, 20-5); *Wade v. State*, 265 So. 3d 677 (Fla 1st DCA 2019). Petitioner did not timely seek discretionary review in the Florida Supreme Court. Nor did he file any application for state postconviction relief within one year of his conviction becoming final.

Petitioner filed the current 28 U.S.C. § 2254 habeas corpus petition on February 8, 2023. (Doc. 1 at 1). Respondent has moved to dismiss, arguing it was filed after expiration of the one-year limitations period found in 28 U.S.C. § 2244(d)(1). (Doc. 20). Petitioner has responded by arguing that he is entitled to statutory and equitable tolling. (Doc. 26). He also argues that the Court may consider his claims under *Martinez v. Ryan*, 566 U.S. 1 (2012).

## II.    Discussion

### A.    The § 2254 petition was untimely.

Respondent seeks dismissal because Petitioner filed his § 2254 petition after the one-year limitations period had expired. Under § 2244(d)(1), a state inmate has one year to file a § 2254 habeas petition. The one-year period runs from the latest of:

2

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute also includes a tolling provision, which provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ."  28 U.S.C. § 2244(d)(2).

It is undisputed that the trigger for the limitations period here is the date the state court judgment became final—i.e., § 2244(d)(1)(A). (Doc. 20 at 3).  A judgment becomes final "when the time for pursuing direct review in [the U.S. Supreme Court,] or in state court, expires." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Respondent asserts, and Petitioner does not dispute, that Petitioner could have sought discretionary review of the First DCA's decision in the Florida Supreme Court. (Doc. 20 at 3). The Florida Supreme Court has jurisdiction to consider "any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself." *The Fla. Star v. B.J.F.*, 530 So. 2d 286, 288 & n.3 (Fla. 1988). Thus, to be eligible for Florida Supreme Court review, the district court's opinion "must contain a statement or citation effectively establishing a point of law upon which the decision rests." *Id.*

That standard is satisfied here. The First DCA issued a written opinion that addressed two questions of law— (1) whether a law office's representation of both the defendant and the victim, through a separate attorney, resulted in a conflict of interest, and (2) whether the trial court erred by admitting similar fact evidence under Fla. Stat. §§ 90.403, 90.404(2)(c)1. (Doc. 20-3); *Wade v. State*, 265 So. 3d 677 (Fla. 1st DCA 2019). Thus, the Florida Supreme Court had the ability to review the First DCA's decision in this case. To obtain such review, Petitioner was required to file a petition for review within thirty days of the First DCA's decision. *See* Fla. R. App. P. 9.120(b); *see also Dailey v. Crews*, No.

4

3:13cv148/WS/EMT, 2014 WL 2158428, at *3-5 (N.D. Fla. May 23, 2014) (stating that because the First DCA had issued a written opinion that addressed a legal issue, the petitioner could have sought review in the Florida Supreme Court; therefore, the First DCA's decision became final for § 2254 purposes when the thirty-day period to seek Florida Supreme Court review expired).[2]

The First DCA denied Petitioner's motion for rehearing on March 20, 2019.  (Doc. 20-5).  The thirty-day clock then began to run, and Petitioner had until April 19, 2019, to seek Florida Supreme Court review.  *See Romero v. State*, 870 So. 2d 816, 817-18 (Fla. 2004) (holding that a party's time to seek discretionary review in the Florida Supreme Court is tolled by the filing of a motion for rehearing with the district court of appeal).  Petitioner failed to do so.  The judgment, therefore, became final on April 19, 2019.  The one-year limitations period started

---

[2] Numerous cases say the same thing.  *See, e.g., Gibson v. Sec'y, Dep't of Corr.*, No. 4:22cv232/MW/ZCB, 2023 WL 4408715, at *2 (N.D. Fla. June 9, 2023) (same); *Bravo v. Sec'y, Dep't of Corr.*, No. 1:22cv69/AW/MJF, 2022 WL 17668456, at *1 (N.D. Fla. Dec. 14, 2022) (same), *adopted by* 2023 WL 4405453 (N.D. Fla. July 7, 2023); *Hall v. Sec'y, Fla. Dep't of Corr.*, No. 4:20cv444/MW/MAF, 2022 WL 2654988, at *3-4 (N.D. Fla. June 6, 2022) (same).

to run the next day, April 20, 2019, and it expired one year later on April 20, 2020. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period is calculated by the "anniversary method," which means it expires on the one-year anniversary of the date it began to run). Petitioner did not file his § 2254 petition by that date. Thus, it was untimely on its face. That leads to the question of whether the deadline was tolled.

> **1.    Petitioner's petition for belated discretionary review in the Florida Supreme Court did not toll the federal limitations period.**

With respect to tolling, the first issue to consider is whether Petitioner's belated petition for Florida Supreme Court review tolled the one-year limitations period. On December 31, 2019, Petitioner filed a belated petition for review with the Florida Supreme Court. (Doc. 20-6). It was denied. (Doc. 20-7); *Wade v. State*, No. SC19-2174, 2020 WL 705001, at*1 (Fla. Feb. 11, 2020). Under Eleventh Circuit precedent, the petition for belated review did not toll the one-year limitation period under § 2244(d)(2). *See Danny v. Sec'y, Fla. Dep't of Corr.*, 811 F.3d 1301, 1303-05 (11th Cir. 2016) (recognizing that "a Florida prisoner's petition

for belated appeal does not toll the limitation period" for filing a federal habeas petition). Thus, the Court rejects this tolling argument.

### 2. Petitioner's Rule 3.800(a) motion did not toll the federal limitations period.

The Court will now consider whether Petitioner's Rule 3.800(a) motion tolled the one-year limitations period. According to Petitioner, he filed a Rule 3.800(a) motion to correct illegal sentence in the state trial court on February 28, 2020. (Doc. 26 at 6). In March of 2022, Petitioner claims he sent a letter to the state court inquiring about the status of his Rule 3.800(a) motion. (*Id*. at 7). The state court clerk responded by informing Petitioner that no such motion had ever been filed by Petitioner. (*Id*.). Petitioner then sent the clerk a Rule 3.800(a) motion, which the state court docketed on June 23, 2022.[3]

---

[3] Petitioner did not file a copy of the Rule 3.800(a) motion with this Court. But it appears he may have intended to do so because his response indicates he was filing the motion as an exhibit. (*See* Doc. 26 at 7). The Court, however, has obtained a copy of the Rule 3.800(a) from the state court's public docket and takes judicial notice of it. *See* Fed. R. Evid. 201 (authorizing a court to take judicial notice at any stage in a proceeding); *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (explaining that district court "properly took judicial notice of the documents" filed in the plaintiff's prior case). A copy of the Rule 3.800(a) motion is attached to this opinion.

To qualify for statutory tolling under § 2244(d)(2), a motion must be "properly filed." 28 U.S.C. § 2244(d)(2). A motion is "filed…when it is delivered to, and accepted by, the appropriate court officer for placement in the official record." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). And for a filing to be "proper," its "delivery and acceptance" must be "in compliance with the applicable laws and rules governing filings." *Id.*

Here, Petitioner has not shown that he "filed" a Rule 3.800(a) motion prior to the expiration of the one-year limitations period on April 20, 2020. The only Rule 3.800(a) motion appearing on the state court docket is one that was filed in June of 2022. Although Petitioner claims he filed a Rule 3.800(a) motion in February of 2020, the state court docket reflects that no such motion was "delivered to, and accepted by, the appropriate court officer for placement in the official record" until June of 2022.[4] *Artuz*, 531 U.S. at 8. Thus, Petitioner has failed to show that

---

[4] The Rule 3.800(a) motion that was filed in June of 2022, includes a "Certificate of Mailing" prepared and signed by Petitioner. The "Certificate of Mailing" states that on February 28, 2020, the motion was "placed in the hands of prison officials for delivery by U.S. Mail." (*See* Attached Rule 3.800(a) motion at 4). But the Certificate of Mailing indicates that the motion was mailed only to the "Office of the State Attorney" and *not* to the state court. That likely explains why no Rule 3.800(a) motion was docketed by the state court in February of 2020.

he "properly filed" a Rule 3.800(a) motion before the one-year limitations period expired on April 20, 2020.  As such, the Rule 3.800(a) motion did not toll the limitations period under 28 U.S.C. § 2244(d)(2).

The Eleventh Circuit reached the same result in an analogous case—*Hammond v. Warden*, No. 14-12858, 2015 WL 13928999 (11th Cir. Sept. 1, 2015).  There, a habeas petitioner argued that the one-year limitations period was tolled by several postconviction motions he filed with the state court.  *Id.* at *2.  The Eleventh Circuit rejected the tolling argument because the petitioner had no evidence showing the motions were filed, "and the state court records. . .do not indicate that he filed such motions" during the relevant time period.  *Id.*  The *Hammond* court further explained that the petitioner's "conclusory, self-serving statement that he filed" the motions "is insufficient to show that the statute of limitations was statutorily tolled."  *Id.*; *see also Wiggins v. Sec'y, Dep't of Corr.*, No. 8:23-cv-1673, 2023 WL 7017565 at *2 (M.D. Fla. Oct. 25, 2023) (finding habeas petitioner was not entitled to tolling where he claimed to have filed a postconviction motion in state court but "the state court docket lists no postconviction motion" prior to the limitations period expiring).

9

What was true in *Hammond* is true here.  Petitioner has not shown that he is entitled to tolling under 28 U.S.C. § 2244(d)(2) based on the filing of a Rule 3.800(a) motion.  Rather, the information in the record shows that Petitioner did not "properly file" a Rule 3.800(a) motion until June of 2022.  And that motion cannot toll the one year limitations period because it was filed after the period had expired.  *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").[5]

---

[5] To the extent Petitioner's response could be liberally construed to make an equitable tolling argument based on a failure of prison officials to mail the motion or a failure of court officials to docket the motion, such an argument lacks merit.  Petitioner has failed to satisfy his burden of showing this is an "extraordinary circumstance" that qualifies for the "rare" application of equitable tolling.  *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (explaining that the "petitioner bears the burden of showing that equitable tolling is warranted," and recognizing that it is an "extraordinary remedy" that "is limited to rare and exceptional circumstances").  All Petitioner has provided is his self-serving statement that he submitted the motion for filing on February 28, 2020.  And that is not enough.  Additionally (as explained above), the "Certificate of Mailing" reflects that Petitioner failed to submit the motion for mailing to the state court in February of 2020 and instead only mailed it to the State Attorney's Office.  *See Johnson v. Warden*, 738 F. App'x 1003, 1006 (11th Cir. 2018) (holding that evidence did not demonstrate extraordinary circumstances required for equitable tolling due to a government official's purported error where petitioner failed to clearly

**B.     Petitioner is not entitled to equitable tolling.**

Having concluded Petitioner is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2), the Court will address whether equitable tolling applies.  "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up).  As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly."  *Hunter*, 587

---

show that the state court misplaced his filing and, instead, evidence indicated that the mistake was petitioner's own fault).  Moreover, Petitioner has failed to show that he "pursuing his rights diligently" as required for equitable tolling.  Assuming *arguendo* that Petitioner did submit a Rule 3.800(a) motion to the state court for filing in February of 2020, by his own admission he waited approximately two years before inquiring of the state court regarding the motion.  (*See* Doc. 26 at 7) (stating that he sent a "notice of inquiry" in May of 2020 regarding the Rule 3.800(a) motion).  That is not a diligent pursuit of rights.  *See Wiggins*, 2023 WL 7017565, at *2 (finding that petitioner who allegedly mailed a motion to state court yet waited a year to follow up regarding the motion had failed to demonstrate diligent pursuit of rights); *see also Castillo v. Dixon*, No. 20-60797, 2022 WL 2651623, at *6 (S.D. Fla. July 8, 2022) (rejecting equitable tolling argument based on alleged lost mail where petitioner claimed to have filed an appeal but waited several months before inquiring as to status of the appeal).

.

F.3d at 1308 (cleaned up). The petitioner bears the burden of showing entitlement to equitable tolling. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014). Meeting that burden requires supporting allegations that are "specific and not conclusory." *Id.* "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* (cleaned up). A "petitioner is not entitled to equitable tolling simply because he alleges constitutional violations at his trial or sentencing." *Id.*

### 1. Petitioner has not shown that an extraordinary circumstance prevented the timely filing of his § 2254 petition.

Petitioner argues that his appellate counsel's course of conduct throughout the year following the First DCA's affirmance of the judgment qualifies as an extraordinary circumstance that warrants equitable tolling. (Doc. 26 at 10-12). He alleges that counsel incorrectly calendared the deadline for filing a petition for discretionary review in the Florida Supreme Court. Second, he says counsel failed to apprise him of the status of his case unless he inquired of her. Third, he claims counsel delayed filing the petition for belated discretionary review. Fourth, he says counsel failed to advise him of his right to file that petition *pro se*.

12

And fifth, he claims counsel delayed sending Petitioner the trial transcript that he needed to file a state postconviction motion that would have tolled the federal habeas filing deadline. (*Id.* at 11-12). In support of his equitable tolling argument, Petitioner has attached correspondence between him and the Florida Public Defender's Office where his appellate attorney was worked. (Doc. 26-1 at 8, 11-16, 18-28, 30).

There is no exhaustive list of what qualifies as an extraordinary circumstance when a petitioner seeks equitable tolling based on his attorney's conduct. *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1218 (11th Cir. 2017). But ordinary negligence, illustrated by "a simple miscalculation that leads a lawyer to miss a filing deadline," does not amount to serious attorney misconduct. *Holland*, 560 U.S. at 652. Neither does good faith gross negligence, such as miscalculating a filing deadline. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). This is in contrast to bad faith, dishonesty, divided loyalty, and an attorney's mental impairment, which may constitute serious attorney misconduct. *Cadet*, 853 F.3d at 1236; *see also Thomas v. Att'y Gen.*, 992 F.3d 1162, 1184 (11th Cir. 2021) (holding that attorney's actions rose "far above gross negligence" and qualified as serious misconduct where counsel

13

sacrificed petitioner's guaranteed opportunity of federal habeas review in order to pursue her own novel, and ultimately meritless, constitutional argument against AEDPA's limitations period).

An attorney's abandonment of his or her client also qualifies as serious attorney misconduct warranting equitable tolling. *Maples v. Thomas*, 565 U.S. 266, 283 (2012); *Cadet*, 853 F.3d at 1236. A petitioner makes a showing of abandonment by proffering evidence of counsel's failure to update the petitioner on essential developments, failure to respond to petitioner's questions or concerns, and severing communication with the petitioner. *Maples*, 565 U.S. at 282 (holding that petitioner showed abandonment where he proffered evidence of counsel's "near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests" over a substantial period of time); *Cadet*, 853 F.3d at 1234 (holding that abandonment—illustrated by not keeping a client updated on essential developments, not responding to a client's questions or concerns, and severing communication with a client—can qualify as serious attorney misconduct). In considering whether counsel's conduct was so egregious that it justifies equitable tolling, the Court "will not dissect the

14

continuing course of conduct in which counsel engaged, but rather view counsel's behavior as a whole." *Downs*, 520 F.3d at 1323.

The Court will now apply the standards above to the facts of this case. On March 21, 2019—just one day after the First DCA denied rehearing in Petitioner's direct appeal—Petitioner's counsel, Attorney Stover, notified Petitioner of the court's decision and told him that she would file a notice to invoke the review of the Florida Supreme Court within thirty days. (Doc. 26-1 at 8-9). On April 11, 2019, Attorney Stover again wrote Petitioner and enclosed a copy of the First DCA's mandate. (*Id.* at 11). Attorney Stover again promised to file a notice to invoke discretionary review and stated, erroneously, that the due date for the notice was April 29, 2019. (*Id.*). It actually was due April 19, 2019.

On April 30, 2019, Attorney Stover wrote Petitioner and fell on her sword. (*Id.* at 12). She told him that she did not file the notice on time, and the reason was "a calendaring error in my office." (*Id.*). Attorney Stover said that she would attempt to correct the error by filing a petition for belated review. (*Id.*). She expressed optimism that the Florida Supreme Court would grant belated review because the court "almost

15

always" granted belated review when the notice was late due to attorney error. (*Id*.).

Petitioner wrote to Attorney Stover on June 3, 2019 and again on August 4, 2019. (*Id*. at 13, 14). He inquired about the status of the petition for belated review and, in the August letter, asked when he could get a copy of the trial transcript. (*Id*. at 14). Petitioner also asked Attorney Stover's opinion about a potential claim of ineffective assistance of trial counsel. (*Id*.). Attorney Stover responded to Petitioner's letters on September 25, 2019. (*Id*. at 15-16). She acknowledged that she had not yet filed the petition for belated review because she had been "very busy," but she promised to file it by the end of the following week. (*Id*.). Attorney Stover answered Petitioner's question about the ineffective assistance claim. (*Id*. at 16). As for the trial transcript, she said that the Public Defender's Office generally kept the record until their representation in the appeal had completely ended. (*Id*.). She said that if she had an alternate source of the record, for example, electronic access, then she would send him the trial transcript; but in cases involving sex crimes, an alternate source often was not available. (*Id*.).

16

Petitioner wrote Attorney Stover on September 27, 2019. (*Id.* at 17). He said that he had been reviewing the initial brief on direct appeal and had discovered a potential trial court error (Petitioner's letter included citations to the trial transcript). (*Id.*). Petitioner did not request any action or advice from Attorney Stover.

Petitioner wrote Attorney Stover again on December 19, 2019, inquiring about the status of the petition for belated review. (*Id.* at 18). He also said that he was researching issues for a Rule 3.850 motion but needed a copy of the trial transcript. (*Id.*). Within two weeks of that letter, Attorney Stover filed the petition for belated review and sent Petitioner a copy (according to the certificate of service). (*Id.* at 19-23). Attorney Stover apparently then retired, and Attorney Presnell took over Petitioner's case.

The Florida Supreme Court denied the petition for belated review on February 11, 2020. Petitioner wrote Attorney Presnell on February 12. (*Id.* at 24-25). He said that he learned of Attorney Stover's retirement and that she had filed the petition for belated review. (*Id.* at 24). He discussed what he believed was a meritorious issue for postconviction relief and asked if Attorney Presnell had familiarized herself with the

17

case. (*Id.* at 24-25). On February 24, 2020, Petitioner sent Attorney Presnell a request for the record, so that he could "move forward with postconviction efforts." (*Id.* at 29).

Two days later, on February 26, 2020, Attorney Presnell filed a timely motion for rehearing with the Florida Supreme Court and sent Petitioner a copy of the motion. (*Id.* at 26-28). The state court denied the motion for rehearing on April 14, 2020. Attorney Presnell notified Petitioner of the decision three weeks later, and she advised him to file a *pro se* petition for belated review. (*Id.* at 30). She said that the Florida Supreme Court appeared to grant such petitions when they were filed *pro se*. (*Id.*).

Now, the question for this Court is whether counsel's behavior as summarized above amounted to serious attorney misconduct. *Holland*, 560 U.S. at 662; *Downs*, 520 F.3d at 1323. The answer to that question is no. Counsel was certainly negligent in missing the filing deadline for the notice to invoke the Florida Supreme Court's discretionary review. But counsel did not abandon Petitioner. *See Robinson v. State Att'y for Fla.*, 808 F. App'x 894, 989-99 (11th Cir. 2020) (holding that attorney's conduct did not indicate attorney abandonment where attorney generally

18

attempted to keep petitioner informed of status of case and ultimately fulfilled the terms of his representation, even though attorney was arguably negligent on several occasions by not immediately notifying petitioner of a state court disposition and failing to acknowledge receipt of a signed pleading until petitioner followed up by phone).  Counsel kept Petitioner updated on essential developments, responded to his questions and concerns in a relatively timely manner, and maintained communication with him.

Should counsel have properly calendared the deadline for filing the petition for discretionary review?  Yes.  Should counsel have filed the petition for belated review earlier?  Yes.  Should counsel have handed over the trial transcript sooner?  Not if she needed it to fulfill the terms of her representation that she and Petitioner agreed on.  Is there any evidence that counsel acted in bad faith, divided loyalty, or dishonesty?  No.  Did counsel abandon Petitioner?  No.  Did counsel's course of conduct on the whole rise to the level of serious misconduct or otherwise extraordinary behavior?  No.  For these reasons, Petitioner has not shown that this is one of the "rare and exceptional circumstances," *Hunter*, 587 F.3d at 1308, where equitable tolling applies.

### 2. Petitioner has not shown that he made reasonable efforts to pursue his rights or that there is a causal connection between his counsel's conduct and the failure to file his section 2254 on time.

The "extraordinary circumstance" element is only one element of equitable tolling. There is also a separate diligence element. *Cadet*, 853 F.3d at 1225 (noting that the extraordinary circumstance element and diligence element are "separate elements," both of which must be met before there can be any equitable tolling). And there is a causation requirement, which means that for equitable tolling to apply there must be a causal connection between the extraordinary circumstances and the failure to timely file. *Thomas v. Att'y Gen.*, 795 F.3d 1286, 1292 (11th Cir. 2015) (holding that absent a causal connection, tolling is not available).

Here, Petitioner has shown neither reasonable diligence nor a causal connection. Petitioner's § 2254 petition presents two claims: (1) the trial court erred by failing to offer him conflict-free counsel when defense counsel revealed, mid-trial, that the Office of Criminal Conflict and Civil Regional Counsel (OCCCRC) was simultaneously representing Petitioner in his criminal case and the victim in a child dependency case;

20

and (2) a related claim of ineffective assistance of trial counsel based on the same facts (namely, that counsel was ineffective for failing to identify the conflict of interest sooner, advise Petitioner how the conflict of interest could affect his defense, advise him that he had a right to "replacement counsel," and preserve the issue for appeal by obtaining necessary factual findings from the trial court).  (Doc. 1 at 6-8, 9-10).

Petitioner knew about the attorney conflict issue as early as September of 2019, because his correspondence with Attorney Stover mentioned that he was reviewing the initial brief filed in his direct appeal.  (Doc. 26-1 at 17).  That initial brief provided the factual and legal basis for the two claims that Petitioner presented in his § 2254 petition. Indeed, Petitioner acknowledges that one of his two federal habeas claims was exhausted on direct appeal by virtue of his presenting it in his initial brief.  (Doc. 1 at 9-10).  And the First DCA's written opinion confirms this. *See Wade v. State*, 265 So. 3d 677 (Fla. 1st DCA 2019) (describing one of Petitioner's arguments as claiming a Sixth Amendment violation based upon the alleged conflict of interest created by the OCCCRC's representing Petitioner and the victim at the same time in different proceedings).

Having already exhausted one of his two claims, and armed with his initial brief, Petitioner could have filed a Rule 3.850 motion presenting his related claim of ineffective assistance of counsel.[6]  And he could have filed that motion in time for it to qualify as a tolling motion (i.e., before the federal limitations period expired on April 20, 2020).  That is, if he acted with reasonable diligence in investigating the federal clock and tracking his federal time.  If he had filed a tolling motion and been mindful of how much federal time he had left, Petitioner then could have filed his § 2254 petition on time had he acted with reasonable diligence.

Petitioner has not satisfied his burden of demonstrating that counsel's conduct was an extraordinary circumstance, that he exercised reasonable diligence in pursuing his rights, or that counsel's conduct

---

[6] Petitioner does not allege that the Public Defender's Office was appointed to represent him in any state proceedings other than the direct appeal proceedings.  Attorney Stover committed to represent Petitioner in a belated attempt to seek further review in the Florida Supreme Court, but that did not prevent Petitioner from filing a *pro se* motion for postconviction relief in the trial court.  Jurisdiction to entertain a postconviction motion returned to the trial court upon issuance of the First DCA's mandate on April 10, 2019.  *Gland v. State*, 239 So. 3d 770, 772 (Fla. 2d DCA 2018).  At that point, Petitioner was free to file a *pro se* pleading in the trial court.

caused him to miss his federal filing deadline.  For those reasons, he is

not entitled to equitable tolling of the federal limitations period.[7]

### C. Petitioner's reliance upon *Martinez v. Ryan*, 566 U.S. 1 (2012) is misplaced.

Petitioner also claims that his untimely filing should be excused

under *Martinez v. Ryan*, 566 U.S. 1 (2012).  (Doc. 26 at 15-18).    The

Supreme    Court's    *Martinez*    decision    provided    a    narrow,    non-

---

[7] One final comment about Petitioner's equitable tolling argument.  He makes brief mention of the COVID-19 pandemic by alleging, "this was during the Covid pandemic which brought the Florida prison system to a complete standstill, where inmates were quaranteened [sic] and had little or no access to institutional libraries."  (Doc. 26 at 12).  This conclusory allegation, devoid of any specifics, does not satisfy Petitioner's burden of showing that the COVID-19 pandemic caused him to miss his federal deadline.  *See Cole*, 768 F.3d at 1158 (holding that a petitioner must meet his burden with supporting allegations that are "specific and not conclusory.").  The FDOC issued its first response to the COVID-19 pandemic on March 6, 2020.  *See Webster v. Sec'y, Fla. Dep't of Corr.*, No. 3:20cv5725/MCR/MJF, 2021 WL 1566848, at *4 (N.D. Fla. Mar. 29, 2021) (taking judicial notice that the FDOC's first announcement addressing COVID-19 issued on March 6, 2020), *adopted by* 2021 WL 1564321 (N.D. Fla. Apr. 21, 2021).  Petitioner does not allege that he made any attempt to file a § 2254 petition in March or April of 2020, much less a diligent effort to do so.  Petitioner's conclusory allegation about the pandemic does not satisfy his burden of demonstrating entitlement to equitable tolling.  Moreover, "[u]nder Eleventh Circuit precedents, lockdowns, and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling."  *Powell v. United States*, No. 21-12432, 2022 WL 2811987, at *1 (11th Cir. Feb. 8, 2022) (single judge order).

23

constitutional, equitable exception to excuse the procedural default of ineffective-trial-counsel claims when (1) state procedures essentially required a petitioner to raise ineffective-trial-counsel claims in an initial-review collateral proceeding, and (2) the petitioner did not have counsel in the initial-review collateral proceeding or counsel in that proceeding was ineffective for not raising a substantial claim of ineffective-trial-counsel. *Martinez*, 566 U.S. at 14, 17.

The problem for Petitioner is that the Eleventh Circuit has held that *Martinez* does not apply to AEDPA's statute of limitations or the tolling of the statute of limitations. *Arthur v. Thomas*, 739 F.3d 611, 630-31 (11th Cir. 2014). For that reason, Petitioner may not use *Martinez* to excuse the late filing of his § 2254 petition.

## III.  Conclusion

For the reasons above, Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus should be dismissed as untimely.

## IV.  Certificate of appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). Petitioner cannot make that showing in this case. Therefore, the undersigned recommends denying a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if either party wishes to submit

arguments on the issue of a certificate of appealability that party may do so in an objection to this Report and Recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Respondent's motion to dismiss (Doc. 20) be **GRANTED**.

2.    The 28 U.S.C. § 2254 petition for a writ of habeas corpus (Doc. 1) be **DISMISSED with prejudice** as untimely.

3.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 20th day of June 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.